UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DOUGLAS CODER & LINDA CODER FAMILY LLLP,<br><br>                      Plaintiff,<br>    v.<br>RNO EXHIBITIONS, LLC, *et al.*,<br>                      Defendants. | Case No. 3:19-cv-00520-MMD-CLB<br><br>ORDER |

**I.    SUMMARY**

Plaintiff Douglas Coder and Linda Coder Family LLLP sued Defendants RNO Exhibitions, LLC ("RNO") and Vincent L. Webb (RNO's alleged alter ego) after Plaintiff lent some money to RNO, but RNO never repaid Plaintiff. (ECF No. 37 ("FAC").) More recently, RNO filed a third party complaint against Scott Coder and Coder Consulting Team, LLC (collectively, "Coder Consulting"). (ECF No. 61 ("Third Party Complaint").) Before the Court is Coder Consulting's motion to strike RNO's Third Party Complaint under Fed. R. Civ. P. 14(a), or alternatively dismiss the Third Party Complaint under Fed. R. Civ. P. 12(b)(6).[1] (ECF No. 70 ("Motion").) Primarily because only RNO's implied indemnity claim against Coder Consulting is even arguably derivative of the claims Plaintiff asserts against RNO, but RNO cannot seek indemnity for its alleged intentional misrepresentations, and as further explained below, the Court will grant the Motion.

///

///

---

[1] RNO filed a response (ECF No. 74), and Coder Consulting filed a reply (ECF No. 75). As further explained below, because the Court finds it must strike the Third Party Complaint under Fed. R. Civ. P. 14(a), the Court does not address Coder Consulting's alternative Fed. R. Civ. P. 12(b)(6) arguments.

## II.   BACKGROUND

The Court incorporates by reference its description of Plaintiff's allegations and claims against RNO and Webb in the FAC provided in its prior order addressing RNO and Webb's motions to dismiss it. (ECF No. 56 ("Prior Order") at 2.) Following the Prior Order, Plaintiff is proceeding under the FAC on three claims against RNO, and Webb through Plaintiff's alter ego theory: (1) breach of contract; (2) intentional misrepresentation; and (3) for an accounting.[2] (*See generally id.*) The gist of Webb's alleged intentional misrepresentations were that RNO was in good financial shape, though Plaintiff alleges it was not at the time Webb allegedly induced Plaintiff to invest in RNO. (*Id.* at 2.)

The following facts are adapted from the Third Party Complaint. (ECF No. 61.) RNO engaged Coder Consulting[3] to raise money in early 2015. (*Id.* at 2.) Coder Consulting touted Scott Coder's father Douglas Coder's ability to raise money and falsely led Webb to believe Douglas Coder was part of Coder Consulting. (*Id.* at 2-3.) Coder Consulting knew RNO's financial condition, and it was Coder Consulting's responsibility to convey information about RNO's financial condition to potential investors it solicited. (*Id.* at 3.) Coder Consulting brought Plaintiff in as an investor in RNO, and closed the deal through which Plaintiff invested in RNO. (*Id.*)

RNO paid Coder Consulting approximately $123,000 in commissions under an oral deal where Coder Consulting earned 10% of all of the money it brought in to RNO as a commission. (*Id.*) RNO sent Coder Consulting a written agreement memorializing this and other arrangements between RNO and Coder Consulting, but Scott Coder refused to sign, explaining he did not want to sign a written contract because he was not licensed to sell securities. (*Id.*)

///

---

[2]As explained in the Prior Order, an accounting is more of a remedy than a claim, but the Court nonetheless declined to dismiss it for the reasons provided in the Prior Order. (ECF No. 56 at 9-10.)

[3]RNO alleges Scott Coder is Coder Consulting Team LLC's alter ego. (ECF No. 61 at 3-4, 6-7.)

2

Based on these allegations, RNO seeks to assert claims against Coder Consulting for: (1) implied indemnity; (2) intentional misrepresentation; (3) breach of oral contract; and (4) alter ego. (*Id.* at 5-7.) RNO's implied indemnity claim is based on the theory that, to the extent anyone made intentional misrepresentations about RNO's financial condition to Plaintiff, it was Coder Consulting, so Coder Consulting is liable to RNO to the extent the Court finds RNO liable for any misrepresentations it made to Plaintiff. (*Id.* at 5.) As to its intentional misrepresentation claim against Coder Consulting, RNO focuses on Scott Coder's alleged, intentional omissions that he was not registered to sell securities, and that his father was not involved in Coder Consulting. (*Id.* at 5-6.)

### III. LEGAL STANDARD

"A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). A third-party complaint must assert that "the third party's liability is in some way dependent on the outcome of the main claim" and is "secondary or derivative" to the third-party plaintiff's liability in the primary action. *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983). "The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough." *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 200 (9th Cir. 1988) (first quoting Wright and Miller, 6 Fed. Prac. & Proc. § 1446 at 257 (1971 ed.), then citing 3 J. Moore, *Federal Practice*, paragraphs 14.04-14.15).

When deciding whether to allow a third-party complaint to proceed, the court must also "consider whether the proposed third-party complaint alleges a cause of action for which relief may be granted." *Helferich Pat. Licensing, LLC v. Legacy Partners, LLC*, 917 F. Supp. 2d 985, 988 (D. Ariz. 2013) (citation omitted); *see also Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1057-58 (N.D. Cal. 2000) ("It makes no sense to permit such a potentially prejudicial expansion of the case at the expense of [the plaintiffs], if the third-party plaintiffs do not have a valid theory of relief against the third-party defendants."). Regardless, however, "[t]he decision to allow a third-party defendant to be impleaded

under rule 14 is entrusted to the sound discretion of the trial court." *One 1977 Mercedes Benz*, 708 F.2d at 452 (citation omitted). "Any party may move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4).

## IV.   DISCUSSION

To start, RNO abandoned its breach of contract claim against Coder Consulting in response to the Motion. (ECF No. 74 at 8.) And as explained in the Prior Order, alter ego is not so much a standalone claim as a theory under which a party may assert claims against someone else. (ECF No. 56 at 4-5.) *See also, e.g.*, *Gardner on Behalf of L.G. v. Eighth Jud. Dist. Ct. in & for Cty. of Clark*, 405 P.3d 651, 656 (Nev. 2017) (describing alter ego as both a theory and a doctrine since codified in Nevada Law in the process of holding it applies to LLCs). That leaves RNO's proposed claims for intentional misrepresentation and implied indemnity. (ECF No. 61 at 5-6.)

The Court must strike RNO's intentional misrepresentation claim under Fed. R. Civ. P. 14(a)(1) and (a)(3) because Coder Consulting's liability for this claim is in no way dependent on the outcome of Plaintiff's operative claims asserted against RNO and Webb in the FAC. *See One 1977 Mercedes Benz*, 708 F.2d at 452 (affirming dismissal of claims "related to but not derivative of the original forfeiture claim" under Rule 14); *Stewart*, 845 F.2d at 200 (affirming dismissal of third party complaint where the "basic facts underlying the original complaint and the basic facts underlying the third-party complaint were disparate, and that each pleading described transactions connected solely by the fact that the same oil and gas wells were involved."). As noted, RNO's intentional misrepresentation claim against Coder Consulting focuses on Scott Coder's alleged, intentional omissions that he was not registered to sell securities, and that his father was not involved in Coder Consulting. (ECF No. 61 at 5-6.) Like the oil and gas wells in *Stewart*, the only tangential connection between these factual allegations and Plaintiff's claims for breach of contract and intentional misrepresentation is Scott Coder, based on RNO's allegation that he was instrumental in the deal between Plaintiff and RNO. *See Stewart*, 845 F.2d at 200. These factual allegations are not derivative of RNO's potential

liability in this case. In other words, whether Scott Coder made representations about the degree to which he worked with his father and whether he was licensed to sell securities to RNO does not depend on whether RNO breached its contract with Plaintiff, or whether RNO and Webb made false representations about RNO's financial condition to Plaintiff. (ECF Nos. 37, 56, 61.)

And while RNO's equitable indemnity claim asserted against Coder Consulting is arguably derivative of Plaintiff's intentional misrepresentation claim against RNO, "for the assertion of a claim for contribution or indemnity, there must also exist a substantive basis for the third-party defendant's liability[.]" *Kim v. Fujikawa*, 871 F.2d 1427, 1434 (9th Cir. 1989) (affirming dismissal of third party complaint under Rule 14 where "ERISA, the governing substantive law, does not recognize a right of contribution"). Substantively, here, RNO cannot shift its liability for its alleged intentional misrepresentations to Plaintiff on to Coder Consulting. *See Stewart*, 845 F.2d at 200. In addition, RNO's attempt to distinguish *Stewart* is unpersuasive. (ECF No. 74 at 5-6.) RNO includes a quotation from *Stewart* in its response (*id.* at 6 n.28), but omits any discussion of the following paragraphs from *Stewart*, where the Ninth Circuit clearly states that "anyone who has committed an active fraud cannot escape loss by shifting his responsibility to another party." *Stewart*, 845 F.2d at 200. And even RNO describes one of Plaintiff's claims against it as one for fraud. (ECF No. 74 at 5.) Thus, RNO cannot escape the pertinent holding of *Stewart* here.[4] RNO cannot properly pursue its equitable indemnity claim in its Third Party

---

[4]The parties also dispute whether RNO's claim against Coder Consulting is premature or unripe because RNO has not yet been found liable to Plaintiff. (ECF Nos. 70 at 15, 74 at 7-8, 75 at 8-9.) The Court assumes without deciding that RNO's claims are ripe and not premature because—as explained *supra*—Plaintiff's attempted third party claims are barred under Fed. R. Civ. P. 14(a) in any event. *See also Hecht v. Summerlin Life & Health Ins. Co.*, 536 F. Supp. 2d 1236, 1241-42 (D. Nev. 2008) (allowing a third party complaint to proceed, stating that "[s]everal United States Circuit Courts of Appeal, including the Ninth Circuit, have indicated Rule 14(a) permits a defendant to pursue contribution and indemnity claims 'even though the defendant's claim is purely inchoate—*i.e.*, has not yet accrued under the governing substantive law—so long as the third-party defendant may become liable for all or part of the plaintiff's judgment.'"). RNO also argues it is not attempting to shift liability for an intentional tort, but that argument is simply not credible. (ECF No. 74 at 7.) *See also, e.g., Halcrow, Inc. v. Eighth Jud. Dist.*

Complaint under Fed. R. Civ. P. 14(a). *See Stewart*, 845 F.2d at 200 (9th Cir. 1988); *see also Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1116 (9th Cir. 1990) ("Nor is there a right of indemnification for intentional torts.").

In sum, the Court will grant the Motion.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Third Party Defendants Scott Coder and Coder Consulting Team, LLC's motion to strike (ECF No. 70) is granted.

The Clerk of Court is directed to strike RNO Exhibitions, LLC's Third Party Complaint (ECF No. 61).

DATED THIS 1st Day of April 2021.

---

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

*Ct.*, 302 P.3d 1148, 1154 n.2 (Nev. 2013), *as corrected* (Aug. 14, 2013) (describing intentional misrepresentation as an intentional tort).