UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DOUGLAS CODER & LINDA CODER
FAMILY LLLP,

                          Plaintiff,

        v.

RNO EXHIBITIONS, LLC, *et al.*,

                          Defendants.

Case No. 3:19-cv-00520-MMD-CLB

ORDER

## I.   SUMMARY

Plaintiff Douglas Coder and Linda Coder Family LLLP sued Defendants RNO Exhibitions, LLC ("RNO") and Vincent L. Webb (RNO's alleged alter ego) after Plaintiff lent some money to RNO, but RNO never repaid Plaintiff. (ECF No. 37 ("FAC").) Before the Court are three motions for summary judgment: (1) RNO's motion on Plaintiff's intentional misrepresentation and accounting claims (ECF No. 77);[1] (2) Webb's motion on all of Plaintiff's claims asserted against him (ECF No. 78);[2] and (3) Plaintiff's motion on its breach of contract claim against RNO and intentional misrepresentation claim against RNO and Webb (ECF No. 79).[3] As further explained below, the Court will grant Plaintiff summary judgment on its breach of contract claim against RNO, decline to resolve the alter ego issue and intentional misrepresentation claim in this order because genuine disputes of material fact preclude summary judgment, and grant Defendants

---

[1]Plaintiff filed a response (ECF No. 86) and RNO filed a reply (ECF No. 90).

[2]Plaintiff filed a response (ECF No. 85) and Webb filed a reply (ECF No. 89).

[3]Webb (ECF No. 82) and RNO (ECF No. 84) filed responses, and Plaintiff filed a reply (ECF No. 91). Defendants requested oral argument, but the Court denies their request as unnecessary. *See* LR 78-1 ("All motions may be considered and decided with or without a hearing.").

1    summary judgment on Plaintiff's accounting claims because the undisputed facts show

2    Plaintiff lacks an ownership interest in RNO.

3    **II.    BACKGROUND**

4            The following facts are undisputed unless otherwise noted. In 2014 and 2015, RNO

5    was a startup seeking funding for its business. (ECF No. 78-1 at 3.) Webb described

6    himself during this timeframe as RNO's Founder and President. (ECF No. 85-2 at 54.)

7    Generally speaking, RNO's business model was to promote and hold auctions at

8    tradeshows using a proprietary app loaded onto tablets handed out to people at the

9    tradeshows, allowing those tradeshow attendees to learn more about certain products

10    and bid on them, and allowing RNO to sell the information collected from the app to

11    companies selling their products at RNO's auctions while also getting a commission on

12    each product sold at auction. (*Id.* at 49-53, 55.) RNO targeted the "$343 Billion dollar

13    Home Improvement and DIY Industry[.]" (*Id.* at 50.)

14            A business associate of Webb introduced him to Douglas Coder. (ECF No. 78-1

15    at 3.) Webb spoke to Douglas Coder on the phone, and Douglas Coder talked about his

16    history raising money for startups, but then explained he was retiring, and put Webb in

17    touch with his son, Scott Coder. (*Id.* at 3.) Scott Coder orally agreed to find investors for

18    RNO with Webb in exchange for a 10% commission on any money he brought in. (*Id.* at

19    3-4; *see also* ECF No. 85-2 at 4.) Scott Coder did find some investors for RNO, and RNO

20    paid him commissions. (ECF No. 78-1 at 4.)

21            It is then disputed exactly how it happened—Scott Coder says he solicited his

22    father to invest in RNO (ECF No. 85-2 at 5-6)—but in 2015, Douglas Coder decided to

23    loan money to RNO (*see id.*; *see also* ECF No. 79-6 at 3). It is also disputed whether

24    Douglas Coder sent RNO some money before entering into an agreement with RNO, but

25    there is no dispute that, on November 15, 2015, Plaintiff[4] and RNO, with Webb as RNO's

26

27            [4]"Plaintiff Douglas Coder & Linda Coder Family LLLP is a limited liability limited partnership that was organized and exists under the laws of the State of Arizona. The members of that partnership are residents of the States of Arizona and Iowa." (ECF No.

28    37 at 2.) Scott Coder says he is a partner in it. (ECF No. 79-6 at 3.) Douglas Coder seems

1    signatory, signed the "Term Sheet and 2 Year Promissory Note" (the "Agreement"). (ECF

2    No. 79-6 at 7-11.) The Agreement provided that Plaintiff would loan RNO $280,000, and

3    RNO would repay that amount with interest. (*Id.* at 7; *see also* 8-9 (the Promissory Note

4    spelling out the loan terms more explicitly).) The Agreement also gave Plaintiff the option

5    to buy a 2.8% equity stake in RNO for one dollar provided it gave RNO the $280,000,

6    returned the signed loan documents, and paid one dollar for the shares. (*Id.* at 7, 10.)

7         Plaintiff paid RNO the $280,000 it agreed to under the Agreement in three

8    installments. (*Id.* at 3.) "On or about February 24, 2017, RNO made an interest payment

9    of $10,373.91 to" Plaintiff. (*Id.* at 4.) Otherwise, RNO has not paid any of the money back.

10   (*Id.* at 4-5.) Plaintiff accordingly contends that RNO owes it $423,626.09 at the time it filed

11   its motion for summary judgment. (*Id.* at 4.)

12        Plaintiff filed this case against RNO, and Webb as RNO's alter ego, seeking

13   repayment of the money it is owed. (ECF No. 37.) Plaintiff specifically brought claims for

14   breach of contract (the Agreement), breach of the covenant of good faith and fair dealing,

15   unjust enrichment, for an accounting, and intentional misrepresentation. (*Id.*)

16        The Court previously dismissed Plaintiff's breach of the covenant of good faith and

17   fair dealing and unjust enrichment claims. (ECF No. 56.)[5] As noted, Plaintiff, RNO, and

18   Webb now move for summary judgment on certain claims.

19   **III.   LEGAL STANDARD**

20        "The purpose of summary judgment is to avoid unnecessary trials when there is

21   no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,

22

23   to also have some control over it because Scott Coder says that it was his father, Douglas
     Coder, who decided to invest in RNO, presumably through Plaintiff as Plaintiff's name is
24   in the Agreement. (ECF No. 85-2 at 5-6.) While the precise relationship between Douglas
     Coder and Plaintiff is unclear, Plaintiff seems to take it for granted that Douglas Coder
25   could, and did, make decisions on behalf of Plaintiff. Moreover, Plaintiff's name suggests
     it is an LLLP set up by Douglas Coder and his wife Linda to make investments or for other
26   purposes.

27        [5]The Court also granted a motion to strike a third-party complaint that RNO filed
     against Scott Coder and his alleged business Coder Consulting Team, LLC, but that ruling
28   is not particularly pertinent to the issues discussed herein. (ECF Nos. 61 (stricken third-
     party complaint), 76 (order).)

18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

1    Further, "when parties submit cross-motions for summary judgment, '[e]ach motion

2    must be considered on its own merits.'" *Fair Hous. Council of Riverside County, Inc. v.*

3    *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, et

4    al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb.

5    1992)) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the

6    court must review the evidence submitted in support of each cross-motion." *Id.*

7    **IV.    DISCUSSION**

8    Though the Court considered each of the pending motions on their own merits and

9    reviewed the evidence submitted in support of each motion, the pending motions raise

10   overlapping issues and arguments, so the Court organizes its discussion below by issue

11   rather than motion. The Court first discusses the overlapping issues of Plaintiff's breach

12   of contract claim and alter ego theory, then Plaintiff's accounting claim, and then Plaintiff's

13   intentional misrepresentation claim.

14   **A.    Breach of Contract and Alter Ego**

15   To start, RNO consents to entry of summary judgment against it on Plaintiff's

16   breach of contract claim. (ECF No. 84 at 2.) It is thus undisputed that RNO breached the

17   Agreement. And the Court agrees with the parties that the undisputed evidence before

18   the Court shows that RNO breached the Agreement. (*See, e.g.*, ECF No. 79-6.) Plaintiff's

19   motion for summary judgment is accordingly granted on its breach of contract claim

20   against RNO.

21   And while Plaintiff does not move for summary judgment on its breach of contract

22   claim against Webb, Webb moves for summary judgment on it. (ECF Nos. 78, 79 at 2.)

23   But Webb's argument that he is entitled to summary judgment on Plaintiff's breach of

24   contract claim is based on his argument that he is not RNO's alter ego, and, indeed, he

25   also moves for summary judgment on Plaintiff's alter ego claim because Plaintiff asserted

26   it as a standalone claim. (ECF No. 78 at 5-6, 9-11.)

27   There is no dispute that Webb signed the Agreement on behalf of RNO. (ECF Nos.

28   78 at 5, 79-6 at 9, 85 at 14 ("On November 5, 2015, Mr. Webb, on behalf of RNO, signed

5

1    the Term Sheet and 2 Year Promissory Note with Coder Family."). Thus, Webb's potential

2    liability for breach of contract depends on whether RNO is his alter ego. (ECF No. 85 at

3    11 (stating that Plaintiff's "breach of contract claim is brought against Mr. Webb as an

4    alter ego of RNO.").) The Court accordingly addresses the parties' alter ego arguments

5    here.

6           Webb argues that Plaintiff has no evidence RNO is his alter ego, specifically

7    arguing that there is no evidence of a unity of interest and ownership or any evidence of

8    manifest injustice. (ECF No. 78 at 9-11.) Plaintiff counters that genuine disputes of

9    material fact preclude summary judgment on this issue because Webb is the manager,

10   organizer, registered agent, founder, and president of RNO, Webb was the only person

11   Plaintiff or any of the Coders ever dealt with, no discovery materials have suggested that

12   anyone else was authorized to speak on RNO's behalf, and RNO was undercapitalized.

13   (ECF No. 85 at 12-13.) The Court agrees with Plaintiff in pertinent part.

14          Under Nevada law, "[a] person acts as the alter ego of a corporation only if: (a)

15   [t]he corporation is influenced and governed by the person; (b) [t]here is such unity of

16   interest and ownership that the corporation and the person are inseparable from each

17   other; and (c) [a]dherence to the notion of the corporation being an entity separate from

18   the person would sanction fraud or promote a manifest injustice." NRS § 78.747. Whether

19   a person acted as the alter ego of a corporation is a question of law. *See id.* Further, "the

20   alter ego doctrine applies to LLCs."[6] *Gardner on Behalf of L.G. v. Eighth Judicial Dist.*

21   *Court in & for Cty. of Clark*, 405 P.3d 651, 655 (Nev. 2017). And "[a]lthough 'there is no

22   litmus test for determining when the corporate fiction should be disregarded,' factors

23   indicating the existence of an alter ego include: '(1) commingling of funds; (2)

24   undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets

25   as the individual's own; and (5) failure to observe corporate formalities.'" *Beta Soft Sys.,*

26

27

28          [6]RNO is an LLC. (ECF No. 43 at 1.)

1   *Inc. v. Yosemite Grp., LLC*, Case No. 2:16-cv-01748-GMN-VCF, 2017 WL 3707393, at

2   *3 (D. Nev. Aug. 25, 2017) (citation omitted).

3          While the ultimate question of whether RNO is Webb's alter ego may be a question

4   of law, disputes of material fact prevent the Court from resolving the question at this stage.

5   Webb's motion on this issue is not the typical summary judgment motion where he

6   presents evidence to support his arguments; he instead argues that Plaintiff has no

7   evidence necessary to establish his liability under an alter ego theory. (ECF No. 78 at 2.)

8   There is nothing improper about Webb's approach. However, Plaintiff does present some

9   evidence in response to Webb's motion leading the Court to conclude that it cannot grant

10  Webb summary judgment that he is not RNO's alter ego and must accordingly let Plaintiff

11  proceed on its breach of contract claim under an alter ego theory against Webb.

12         For example, Webb argues "[t]here is no evidence that Webb in his individual

13  capacity is a member in RNO or owns any portion of RNO."[7] (*Id.*) But Plaintiff responds

14  with an RNO promotional PowerPoint listing Webb as the Founder and President of RNO

15  (ECF No. 85-2 at 54) and RNO's articles of incorporation filed with the Nevada Secretary

16  of State listing Webb as the noncommercial registered agent, manager (or potentially

17  _____

18         [7]There is a subtle difference between this statement and saying, "Webb is not a
    member or partial owner of RNO." That would be a statement of fact. But what Webb
    offers is merely an assertion that Plaintiff's cannot prove he is a member or partial owner
19  of RNO. This reinforces the Court's finding that disputes of material fact remain precluding
    summary judgment. As pertinent to this discussion, is Webb a member or partial owner
20  of RNO? The Court cannot say based on this clever but unhelpful phrasing unsupported
    by any evidence. And while admittedly Webb's reply brief includes the statement, "[i]n this
21  case, we have a Manager (Webb) who is not an owner of RNO[,]" (ECF No. 89 at 7),
    "[a]ttorney argument is no evidence." *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d
22  1034, 1043 (Fed. Cir. 2017). Because Plaintiff presented some evidence tending to show
    Webb has an ownership interest in RNO with its response, it is no longer sufficient for
23  Webb to simply reiterate attorney argument that he does not. In addition, Webb similarly
    states in his motion, "[a] company owned by Webb named Hellgate Ranch LLC has an
24  ownership stake in RNO. Plaintiff would have to pierce the corporate veil of RNO and
    then pierce the corporate veil of Hellgate Ranch to assert liability against Vincent Webb
25  individually." (ECF No. 78 at 9.) A declaration from Webb accompanied his motion but
    does not support this statement—Webb's declaration did not include any explanation
26  about the relationship between Webb, Hellgate Ranch LLC, and RNO, or any supporting
    exhibits. (ECF No. 78-1.) This does not satisfy Webb's burden under Fed. R. Civ. P.
27  56(c)(1) or LR 56-1, which requires, "citing the particular portions of any pleading,
    affidavit, deposition, interrogatory, answer, admission, or other evidence on which the
28  party relies." The Court lacks evidence at this juncture to make a finding as to Webb's
    relationship with RNO.

1   managing member), and organizer of RNO (ECF No. 85-6 at 2). This evidence does not
2   definitively show that Webb is a member or partial owner of RNO, but it shows he was
3   very involved in RNO, and one could reasonably infer from this high degree of
4   involvement that Webb was or is a member or partial owner of RNO. Indeed, it would be
5   surprising if someone so involved in a small company had absolutely no ownership
6   interest in it. And Webb does not present any evidence in reply, simply doubling down on
7   his argument that, "Plaintiff has no evidence that Webb owns any part of RNO." (ECF No.
8   89 at 6.) But because of the evidence Plaintiff presented—which Webb declines to
9   engage with—and viewing this evidence in the light most favorable to Plaintiff as the
10  nonmoving party, it would be improper to grant Webb summary judgment by finding that
11  he has no ownership interest in RNO. And "the absence of corporate ownership is not
12  dispositive" in any event. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1242
13  (D. Nev. 2008); *see also id.* at 1243 (declining to grant summary judgment because a
14  dispute of material fact existed as to whether two entities were alter egos).

15      Moreover, it is undisputed that RNO was undercapitalized. (ECF No. 78 at 9-10
16  (asserting Plaintiff has no evidence on the other factors mentioned in *Beta Soft Sys.*), 85
17  at 12 (stating it is undisputed that RNO was undercapitalized), 89 at 6-7 (declining to
18  dispute that RNO was undercapitalized).) Thus, one of the factors listed in *Beta Soft Sys.,*
19  2017 WL 3707393, at *3, weighs in favor of finding that RNO was Webb's alter ego. As
20  to the other *Beta Soft Sys.* factors, all the Court has are Webb's assertions that Plaintiff
21  cannot prove, for example, that "Webb treated RNO's corporate assets as his own[.]"
22  (ECF No. 78 at 9-10.) What the Court lacks is evidence tending to suggest any of these
23  other factors weigh one way or the other.

24      In addition, Plaintiff points to evidence to the effect that Plaintiff only ever dealt with
25  Webb, the evidence produced during discovery shows that Webb was the only person
26  sending emails on RNO's behalf, and contracts between RNO and other investors were
27  all signed by Webb. (ECF No. 85 at 12 (citing ECF Nos. 85-7 and 85-8).) This evidence
28  tends to show that Webb was involved in RNO's affairs to such a degree that it might be

1  his alter ego. At least, it further suggests to the Court it would be inappropriate to grant

2  Webb summary judgment that RNO is not his alter ego.

3      In sum, disputes of material fact—and indeed, a deficiency of factual development

4  in the record before the Court—preclude the Court from reaching the legal question of

5  whether RNO was Webb's alter ego at this time. Webb's motion for summary judgment

6  is denied to the extent it seeks a ruling that RNO was not his alter ego. Accordingly,

7  Webb's motion for summary judgment is also denied as to Plaintiff's breach of contract

8  claim because Plaintiff may still be able to prevail on that claim against him if Plaintiff can

9  establish RNO was Webb's alter ego.

10      **B.    Accounting**

11      Both RNO and Webb move for summary judgment on Plaintiff's accounting claim.

12  (ECF Nos. 77 at 3-4, 78 at 6.) Defendants both make the same argument: Plaintiff has no

13  right to an accounting because Plaintiff has no special relationship with either RNO or

14  Webb, because Plaintiff owns no stock in RNO, as Plaintiff never paid the additional dollar

15  it was required to pay to get a 2.8% equity stake in RNO—and mere creditors like Plaintiff

16  have no right to the equitable remedy of accounting. (*See id.*) Plaintiff counters that a

17  genuine dispute of material fact precludes summary judgment on this issue because,

18  while Plaintiff never received its 2.8% equity interest in RNO, it should have, because it

19  paid RNO $280,000, or 280,000 times the amount it owed to get the stock interest. (ECF

20  Nos. 85 at 15, 86 at 11.) RNO replies in pertinent part that the Agreement specified the

21  one dollar was additional to the $280,000.[8] (ECF No. 90 at 6.) The Court agrees with

22  RNO.

23  ───────────────

24      [8]RNO's argument on this claim is more pertinent than Webb's because Plaintiff
seeks an accounting from RNO. (ECF Nos. 37 at 8 ("RNO Exhibitions has an obligation
to render a full and complete accounting to Plaintiff of how it has spent the money loaned

25  to it by Plaintiff."), 85 at 15 ("RNO Exhibitions has an obligation to render a full and
complete accounting to Plaintiff of how it has spent the money loaned to it by Plaintiff."),

26  86 at 11 ("RNO Exhibitions has an obligation to render a full and complete accounting to
Plaintiff of how it has spent the money loaned to it by Plaintiff.").) To the extent Plaintiff

27  even asserts this claim against Webb, it does so on an alter ego theory. Thus, if Plaintiff
does not have a right to an accounting from RNO, it does not have a right to an accounting

28  from Webb. And the Court's finding above that disputes of material fact preclude summary

The pertinent portion of the Agreement reads:

RNO Exhibitions LLC agrees to make a one time sale of one half percent (2.8 %) of RNO Common Stock to Douglas Coder & Linda Coder Family LLP for one dollar ($1.00).
Upon receipt of (2) year business loan, the signed loaned documents and receipt of one dollar ($1.00) for the sale of stock, Lender will receive immediate equity in the Company with all its voting and profit sharing rights;

(ECF No. 79-6 at 10; *see also* ECF No. 86-5 at 5 (same).)[9] Plaintiff must accordingly have given RNO three things before it got the promised equity interest: (1) the loan money; (2) the signed loan documents; and (2) one dollar for the stock. (*Id.*) The Court accordingly agrees with RNO that the one dollar is additional—not part of—the $280,000 Plaintiff undisputedly loaned RNO. (ECF No. 90 at 6.)

Further, Plaintiff does not dispute RNO's assertion that it never paid the additional dollar, nor did Plaintiff proffer any evidence that it did when challenged in RNO's motion. (ECF Nos. 85 at 15, 86 at 11.) The Court accordingly finds that Plaintiff has no ownership or equity stake in RNO, because Plaintiff never performed a condition precedent to receiving one.

Considering that Plaintiff has no ownership or equity stake in RNO, Plaintiff has no right to an accounting from RNO. The Court previously declined to dismiss the accounting claim even though it is a remedy, not a claim, because without "an accounting, Plaintiff would be unable to determine the value of this ownership interest, if any." (ECF No. 56 at 9.) However, the undisputed facts now show that Plaintiff has no ownership interest in RNO, and the Court so holds. Thus, Plaintiff is merely a creditor of RNO. And the debt RNO owes to Plaintiff is neither disputed—*see supra*—nor difficult to compute, so there is no reason to allow Plaintiff's accounting claim to proceed past this point in this case.

---

judgment that RNO is not Webb's alter ego accordingly does not stand in the way of granting summary judgment to both RNO and Webb on Plaintiff's accounting claim because the Court finds RNO is entitled to summary judgment on Plaintiff's accounting claim against it.

[9]There is an error in this portion of the Agreement because it states one half percent and then 2.8%. The parties do not discuss this error in their briefing. Regardless, the error is immaterial to the Court's analysis because the dispute about the ownership stake is whether Plaintiff has one, not the amount of the ownership stake.

10

1   *See Mobius Connections Grp., Inc. v. TechSkills, LLC*, Case No. 2:10-cv-01678-GMN,

2   2012 WL 194434, at \*8-\*9 (D. Nev. Jan. 23, 2012) (granting one party summary judgment

3   that it deserved an accounting from the other so it could determine the value of a

4   percentage of cash collected that it was entitled to, relying on Delaware law for the general

5   proposition that one element of an accounting claim is that "the accounts are held by one

6   side and there are circumstances of great complication"); *see also Equitable Life Assur.*

7   *Soc'y of U.S. v. Brown*, 213 U.S. 25, 44 (1909) (holding that a mere creditor has no right

8   to an accounting "in the absence of any trust relation between them" and the debtor).

9       In sum, RNO and Webb's motions for summary judgment are granted as to

10  Plaintiff's accounting claim.

11          **C.    Intentional Misrepresentation**

12      Plaintiff, RNO,[10] and Webb all move for summary judgment on Plaintiff's intentional

13  misrepresentation claim.[11] (ECF Nos. 77 at 4, 78 at 6-8, 79 at 12-17.) Webb argues that

14  he never sent the business plan containing the alleged material omissions to Plaintiff, or

15  even solicited money from Plaintiff directly, and that there is no evidence of justifiable

16  reliance because Plaintiff should have known RNO was in bad financial shape when

17  Plaintiff made its loan to RNO. (ECF No. 78 at 6-8.) Plaintiff basically argues in its motion

18  that Webb put out rosy projections about RNO's future financial performance and never

19  corrected them even though he knew they were not accurate, and Scott Coder was acting

20  as Webb's agent, so Webb's argument that he never directly spoke with Plaintiff fails.

21  (ECF No. 79 at 12-16.) Plaintiff further responds in pertinent part to Webb's motion with

22

23          [10]RNO simply incorporates by reference Webb's arguments so the Court does not
24  discuss RNO's arguments throughout this section. (ECF No. 77 at 4.) And it was Webb
    who made the alleged material omissions in any event.

25          [11]Under Nevada law, intentional misrepresentation requires: "[a] false
26  representation made by the defendant, knowledge or belief on the part of the defendant
    that the representation is false—or, that he has not a sufficient basis of information to
27  make it, an intention to induce the plaintiff to act or to refrain from acting in reliance upon
    the misrepresentation, justifiable reliance upon the representation on the part of the
28  plaintiff in taking action or refraining from it, and damage to the plaintiff, resulting from
    such reliance[.]" *Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975).

1   a declaration from Scott Coder stating that Webb travelled to Phoenix and presented to

2   him and his father in person, and subsequently made several false statements to Scott

3   Coder to the effect that RNO was in good financial shape though he knew it was not.

4   (ECF No. 85 at 17-19; *see also* ECF No. 85-2 at 3-8.) Webb responds to this contention

5   in his response to Plaintiff's motion by stating, "Plaintiff never provides any evidence that

6   Webb provided the May 2014 Draft Plan to Plaintiff." (ECF No. 82 at 5.) Webb otherwise

7   reiterates his argument that there was no justifiable reliance on Plaintiff's part because,

8   essentially, Douglas Coder should have known better, and argues that Plaintiff's

9   argument that Webb's false representations or omissions were communicated through

10  Scott Coder is not in line with the allegations in the operative complaint. (*Id.* at 3-4, 5-6.)

11      By his reply in support of his motion, Webb acknowledges that there are several

12  genuine disputes of material fact as to Plaintiff's intentional misrepresentation claim, but

13  states, "[w]hat is undisputed is that Plaintiff has no evidence of reasonable reliance." (ECF

14  No. 89 at 5.) Plaintiff argues in reply—supported by Scott Coder's declaration and

15  deposition testimony from Webb—that Plaintiff justifiably relied on Webb's false

16  statements and/or omissions because Webb passed false information along to Plaintiff

17  through Scott Coder acting as an agent for RNO knowing that that information was false

18  when he passed it along or failed to correct prior information he had passed along

19  suggesting that RNO was in good financial shape. (ECF No. 91 at 3-7 (citing ECF Nos.

20  85-2 and 91-1).)

21      The Court finds that no party is entitled to summary judgment on the intentional

22  misrepresentation claim on the record presented with the pending motions. Basic material

23  facts remain in dispute, like whether Webb ever went to Phoenix, or met with Douglas or

24  Scott Coder in person, or whether Webb actually gave Plaintiff any information directly,

25  or only through Scott Coder, and if so, what information Webb gave Plaintiff. Webb

26  concedes as much by essentially arguing in his reply that the only way the Court could

27  grant him summary judgment on this claim is by finding Douglas Coder was objectively

28  unreasonable when he decided to lend money to Webb through Plaintiff. (ECF No. 89 at

3-6.) Webb specifically argues the justifiable reliance element of an intentional misrepresentation claim is lacking because Plaintiff has "no evidence of reasonable reliance on the misrepresentations and omissions alleged." (*Id.* at 5-6.) To define the type of reasonableness he is discussing, Webb asks hypothetical questions such as what due diligence did Douglas Coder conduct before he decided to invest and why did he not get a personal guarantee from Webb before agreeing to loan RNO money? (*Id.* at 5-6.)

The Court cannot answer these questions on this record. And that further illustrates why summary judgment would be inappropriate—in any party's favor—on the intentional misrepresentation claim at this time. All pending motions for summary judgment are accordingly denied to the extent they seek summary judgment on Plaintiff's intentional misrepresentation claim.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that RNO's motion for summary judgment (ECF No. 77) is granted in part, and denied in part, as specified herein.

It is further ordered that Webb's motion for summary judgment (ECF No. 78) is granted in part, and denied in part, as specified herein.

It is further ordered that Plaintiff's motion for partial summary judgment (ECF No. 79) is granted in part, and denied in part, as specified herein.

DATED THIS 8th Day of February 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

13